**William L. TAYLOR, Maryanne Silva, Raymond W. Christiansen, Lionel L. Bourget, and David A. Webb**

v.

**STATE OF RHODE ISLAND DEPARTMENT OF CORRECTIONS, and George A. Vose, Jr., Individually and in his official capacity as Director of the Rhode Island Department of Corrections.**

Civ. A. No. 94–0596 P.

United States District Court, D. Rhode Island.

Nov. 21, 1995.

94

Richard A. Sinapi, Cranston, RI, for plaintiffs.

Thomas A. Palombo, Richard B. Woolley, R.I. Attorney General's Office, Providence, RI, Ellen E. Alexander, Cranston, RI, for defendants.

## MEMORANDUM AND ORDER

.PETTINE, Senior District Judge.

Now before this Court are the plaintiffs' and defendants' cross Motions for Summary Judgment. This case concerns Rhode Island Department of Corrections Regulation 10.07.03 ("the Regulation"), which imposes a monthly supervision fee on criminal offenders sentenced to probation or parole. The plaintiffs challenge the constitutionality and statutory authority for the application of the Regulation to offenders who were sentenced to probation prior to the Regulation's effective date. All of the plaintiffs in this case are probationers who were so sentenced. They contend that this imposition of supervision fees violates the prohibition against *ex post facto* laws under Article I § 10 of the United States Constitution and Article I § 12 of the Rhode Island Constitution, as well as the plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution and Article 1 § 2 of the Rhode Island Constitution. The plaintiffs bring their federal constitutional claims pursuant to 42 U.S.C. § 1983 and their state constitutional claims directly under the Rhode Island Constitution. The plaintiffs also allege that Regulation 10.07.03, as applied retrospectively to previously sentenced probationers, exceeds the authority granted to the Department of Corrections by R.I.Gen.Laws § 42–56–38. The plaintiffs move for declaratory judgment, injunctive relief, and compensatory damages. The defendants object and further argue that the defendant George Vose, Jr. is entitled to immunity from suit in his individual capacity.

For the reasons which follow, this Court grants the plaintiffs' Motion for Summary Judgment on the *ex post facto* and statutory authority issues, grants the defendants' Motion for Summary Judgment on the substan-

tive due process claim, denies both the plaintiffs' and the defendants' Motions for Summary Judgment on the procedural due process claim, and grants the defendant George Vose, Jr.'s Motion for Summary Judgment as to his qualified immunity. Because the Regulation's application to the plaintiffs is held invalid on *ex post facto* and statutory authority grounds, the merits of the plaintiffs' procedural due process claim need not be resolved.

## I.

## STATEMENT OF FACTS

Rhode Island General Laws § 42–56–38, as enacted by P.L.1992, ch. 133, art. 97, sec. 2, provides that each sentenced criminal offender committed to the care, custody, or control of the Department of Corrections, including but not limited to those on probation or parole, is required to reimburse the State for the costs of services provided, or a reasonable portion thereof. This statute specifically provides that its provisions shall not be effective until the date that rules and regulations implementing its provisions are filed with the Secretary of State. On June 17, 1994, subsequent to a public hearing, the Department of Corrections filed Regulation No. 10.07.03, entitled "Adult Probation and Parole Offender Supervision Fees," with the Secretary of State. The Regulation states that a monthly fifteen dollar supervision fee will be assessed on probationers and parolees, effective July 1, 1994. The Regulation also provides for a waiver of the supervision fee if the offender demonstrates financial hardship to probation or parole staff.

The plaintiffs, William L. Taylor, Mary-Anne Silva, Raymond W. Christiansen, Lionel Bourget, and David A. Webb, were all convicted and sentenced to probation with the Department of Corrections before July 1, 1994. On June 19, 1994, George Vose, Jr., Director of the Department of Corrections, sent a letter to all probationers and parolees notifying them that the fifteen dollar fee would be imposed beginning July 1, 1994. The letter made no mention of available waivers for financial hardship. Each plaintiff was assessed offender supervision fees after July 1, 1994. All the plaintiffs have alleged that they contacted their probation offices inquiring about the obligations to pay the fee and that they were not informed about the available waiver procedure. The defendants assert that the plaintiffs never requested waivers.

Those plaintiffs who have been delinquent in paying their supervision fees have received monthly notices containing the words "FINAL NOTICE" and advising that a civil action would follow if the fees were not paid in full. The agency collecting the supervision fees may sue for any delinquent payments, even after the term of probation has ended. The regulations provide that probation shall not be violated solely for nonpayment of fees, but that if other violations occur, the court, in deciding to revoke probation, may consider nonpayment as indicating a pattern of noncompliance.

The plaintiffs claim that the imposition of supervision fees on those who were sentenced to probation prior to the effective date of the Regulation violates the *Ex Post Facto* Clause and the Due Process Clause, as well as exceeding the statutory authority of R.I.Gen.Laws § 42–56–38. The plaintiffs seek a declaratory judgment that the regulation as imposed is invalid, an injunction prohibiting the defendants from collecting supervision fees from the plaintiffs, and an order requiring reimbursement of fees previously collected from the plaintiffs. Based on the Agreed Statement of Facts, the plaintiffs and the defendants have filed cross Motions for Summary Judgment, which are now before this Court.

## II.

## SUMMARY JUDGMENT

A federal court may grant summary judgment in a civil action "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if it could be legally relevant to the outcome of the case. *Anderson v. Liber-*

*ty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). To prevent summary judgment, the evidence, viewed in the light most favorable to the nonmoving party, must be sufficient to permit a rational factfinder to resolve the issue in favor of either side. *Id.; Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989). In this case, the parties have stipulated to an Agreed Statement of Facts for the purposes of summary judgment. Given this stipulation, no genuine issue of material fact exists relating to the dispositive *ex post facto* and statutory authority claims. As discussed below, several material facts relating to the procedural due process claim are disputed or absent. However, since the regulation as applied to the plaintiffs is now held invalid on other grounds, the merits of the plaintiffs' procedural due process claim need not be resolved.

### III.

### QUALIFIED IMMUNITY

■ Qualified immunity shields government officials who are exercising discretionary powers "from [personal] liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Hegarty v. Somerset County*, 53 F.3d 1367 (1st Cir.1995). The focus of this standard is the "objective reasonableness of an official's conduct as measured by reference to clearly established law." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. In *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), the Supreme Court explained that qualified immunity shields such government officials from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038 (citation omitted). The government official's belief need not, however, be correct; qualified immunity doctrine "allows for the inevitable reality that 'law enforcement officials will in some cases reasonably but mistakably conclude that [their conduct] is [constitutional], and ...

that ... those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.'" *Hegarty*, 53 F.3d at 1373 (quoting *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3040) (emphasis omitted).

The plaintiffs contend that the defendant George Vose, Jr., Director of the Department of Corrections, deprived the plaintiffs of their constitutional rights by implementing an *ex post facto* law and by denying procedural and substantive due process to the plaintiffs. These constitutional guarantees stand inviolate, and I can safely conclude that Mr. Vose knew or should have known of these protections.

I need not discuss here Mr. Vose's immunity with regard to the procedural and substantive due process claims, as I find, *infra*, that the plaintiffs' substantive due process rights were not violated and that I cannot and need not resolve the merits of the plaintiffs' procedural due process claims. With regard to the application of the *Ex Post Facto* Clause, however, I find that Mr. Vose reasonably could have concluded, even if mistakenly, that his conduct was lawful, and therefore he is entitled to qualified immunity. Although the *ex post facto* guarantee is certainly "clearly established," the question of whether an offender supervision fee such as the one imposed upon the plaintiffs falls under the scope of the *Ex Post Facto* Clause is not so clear cut. Even though I ultimately find that the Regulation did violate the *Ex Post Facto* Clause, I note that this is a difficult case to which no binding case law applies. The question before this Court is a complex one, involving close and careful consideration of constitutional issues in a factual situation which has never been considered by the First Circuit or the Supreme Court. This Court cannot, under the generous qualified immunity standard discussed above, charge Mr. Vose with the legal refinements involved in reaching such a conclusion. Thus I find that he is entitled to qualified immunity.

### IV.

### EX POST FACTO

■ A critical question in this case is whether the defendants' imposition of the

probation supervision fee upon the plaintiffs was in violation of the *Ex Post Facto* Clause of the United States Constitution and the Rhode Island Constitution.[1] Since the Rhode Island Constitution's *Ex Post Facto* Clause is essentially identical and has been interpreted as requiring the same standard as under the United States Constitution, *Lerner v. Gill*, 463 A.2d 1352, 1356 (R.I.1983), I address these claims together.

In *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), the United States Supreme Court discussed in some detail the current scope of the *Ex Post Facto* Clause. The *Collins* Court further reaffirmed the Court's earlier summary of the meaning of the *Ex Post Facto* Clause in *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925):

> It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; *which makes more burdensome the punishment for a crime, after its commission,* or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*

*Collins,* 497 U.S. at 42, 110 S.Ct. at 2719 (quoting *Beazell,* 269 U.S. at 169–70, 46 S.Ct. at 68–69) (emphasis added). *Collins* confirmed that these three *Beazell* categories define the scope of the *Ex Post Facto* clause, stating that "[t]he *Beazell* formulation is faithful to our best knowledge of the original understanding of the *Ex Post Facto* Clause."[2] *Id.* 497 U.S. at 43, 110 S.Ct. at 2719.

In the present case, the plaintiffs do not attack the validity of their convictions or

punishments as originally imposed. Therefore, the legal issue here is whether the challenged provision imposing the monthly offender supervision fee on the plaintiffs "makes more burdensome the punishment for a crime, after its commission." *Id.* at 42, 110 S.Ct. at 2719 (quoting *Beazell,* 269 U.S. at 169–70, 46 S.Ct. at 69). The plaintiffs argue that the supervision fee flows from the commission of the underlying crime and that the fee is punitive, as an additional requirement or condition of probation. The defendants assert that the fee is not criminal punishment but rather a civil surcharge.

I note, first, that no binding case law comes to bear directly upon this issue. Although the Supreme Court has recently discussed the scope of the *Ex Post Facto* Clause in *Collins* and the even more recent *California Dep't of Corrections v. Morales,* —— U.S. ——, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), neither of these opinions sheds light on the question of when an additional fee which is related to an already-imposed punishment makes that punishment "more burdensome." In *Collins,* a trial court jury had imposed upon respondent Youngblood a punishment of life imprisonment and a fine of $10,000. *Collins,* 497 U.S. at 40, 110 S.Ct. at 2718. However, the fine was not authorized by law; thus, under Texas law at the time, the judgment and sentence were void and Youngblood was entitled to a new trial. Subsequent to Youngblood's conviction, however, a new state statute became effective, allowing an appellate court to reform an improper jury verdict rather than grant a new trial. The appellate court to which Youngblood had applied for a new trial thus reformed Youngblood's conviction by deleting the $10,000 fine and, correspondingly, denied his request for a new trial. *Id.*

---

1. Art. 1, § 10 of the Constitution provides in part: "No State shall ... pass any ... ex post facto Law...."

2. The *Collins* Court also looked to Justice Chase's opinion in *Calder v. Bull,* 3 U.S. 386, 390, 1 L.Ed. 648 (1798) for an early exposition of the "core concern" of the *Ex Post Facto* Clause:

 1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes

such action. 2d. Every law that *aggravates* a crime, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment,* and inflicts a *greater punishment,* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence,* and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender,*"
*Collins,* 497 U.S. at 42, 110 S.Ct. at 2719 (quoting *Calder,* 3 U.S. at 390) (emphasis in original).

Youngblood challenged the new statute as a violation of the *Ex Post Facto* Clause. The Supreme Court's discussion focused on whether a legislative change violates the *Ex Post Facto* Clause even if it does not actually change the amount of the punishment. For, the Court in *Collins* distinctly pointed out that the challenged legislation was simply a "procedural change" which did not "alter the definition of the crime of aggravated sexual abuse, of which Youngblood was convicted, nor [did] it increase the punishment for which he [was] eligible as a result of that conviction." *Collins,* 497 U.S. at 44, 110 S.Ct. at 2720. The point of *Collins* was that a legislative change does not violate the *Ex Post Facto* Clause unless it meets one of the three categories outlined in *Beazell.* In *Collins,* the appellate court's deletion of the fine and corresponding denial of a new trial clearly did not fall within any of these three categories; it simply changed the procedure for correcting an improper punishment, which in no way increased (and, in fact, decreased) the burden of Youngblood's punishment.

In coming to this conclusion, *Collins* rejected the notion that a legislative change violates the *Ex Post Facto* Clause if it merely " 'in relation to the offence [sic] or its consequences, alters the situation of a party to his disadvantage.' " *Collins,* 497 U.S. at 48–49, 110 S.Ct. at 2722 (quoting *Kring v. Missouri,* 107 U.S. 221, 228–229, 2 S.Ct. 443, 449–450, 27 L.Ed. 506 (1883) (emphasis omitted)). *Collins* explicitly overruled *Kring,* stating:

> The holding in *Kring* can only be justified if the *Ex Post Facto* Clause is thought to include not merely the *Calder* categories, but any change which "alters the situation of a party to his disadvantage." We think such a reading of the Clause departs from the meaning of the Clause as it was understood at the time of the adoption of the Constitution, and is not supported by later cases.

*Id.* 497 U.S. at 50, 110 S.Ct. at 2723. The *Collins* Court also overruled *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), which involved the Sixth Amendment right to trial by jury and the question of whether the state of Utah could retrospec-

tively take away the Sixth Amendment right to a 12–person jury when it became a State rather than a Territory and was therefore "no longer bound by Sixth Amendment as then interpreted." *Collins,* 497 U.S. at 51, 110 S.Ct. at 2724. In overruling *Thompson,* the Court stated that, to violate the *Ex Post Facto* Clause, it was not enough that a "substantial right" be taken away as a result of the legislative change. *Id.* The *Collins* Court noted, "The right to a jury trial provided by the Sixth Amendment is obviously a 'substantial' one, but it is not a right that has anything to do with the definition of crimes, defenses, or punishments, which is the concern of the *Ex Post Facto* Clause." *Id.* In the present case, the plaintiffs have not merely been placed at a procedural disadvantage or been denied a substantial right unrelated to their punishment. Instead, the probation supervision fee at issue directly relates to and concretely affects the plaintiffs' punishment.

*Collins,* therefore, did not address the question presented in the instant case, which is whether imposing supervision fees on probationers already sentenced falls within the categories laid out in *Beazell.* The holding of *Collins* is simply that, to be a violation of the *Ex Post Facto* Clause, a statute must come within "the finite *Beazell* categories." 497 U.S. at 44, 110 S.Ct. at 2720. The Texas statute at issue in *Collins* clearly did not; thus, the Court did not address the nuances of the particular *Beazell* categories, as is necessary in the instant case in order to determine whether the supervision fee "makes more burdensome the punishment for [the plaintiffs' crimes], after [their] commission."

*Morales* also involved an *Ex Post Facto* Clause issue but fails to shed light on the present case. The facts of *Morales* involved a change in parole hearing procedure; a legislative amendment had retrospectively changed the frequency of parole suitability proceedings available to the respondent. *Morales,* —— U.S. at ——, 115 S.Ct. at 1600. Unlike *Collins,* the *Morales* Court did address the question of whether this change increased the measure of the prisoner's punishment. However, in holding that the

change did not violate the *Ex Post Facto* Clause, the Court focused entirely on the fact that the change created only a *"speculative and attenuated possibility* of producing the prohibited effect of increasing the measure of punishment for covered crimes." *Morales,* —— U.S. at ——, 115 S.Ct. at 1603 (emphasis added). This focus was based upon the Court's holding in *Beazell* that "the question of what legislative adjustments 'will be held to be of sufficient moment to transgress the constitutional prohibition' *must* be a matter of 'degree.'... [I]n evaluating the constitutionality [of the amendment at issue], we must determine whether it produces a *sufficient risk* of increasing the measure of punishment attached to the covered crimes." *Morales,* at ——, 115 S.Ct. at 1603 (quoting *Beazell,* 269 U.S. at 171, 46 S.Ct. at 69) (emphasis added). The subsequent discussion made clear that *Morales,* holding that the change in parole hearing procedure was not of "sufficient moment" was a result of the *uncertainty* of its effect upon the prisoner's punishment, rather than the *inadequacy* of its burdens.

In the present case, the defendants argue that under *Morales,* the fifteen dollar monthly fee, with its liberal waiver criteria and provisions for retroactive waivers, does not transgress any of the plaintiffs' constitutional rights. However, this argument mischaracterizes the nature of *Morales'* admonition regarding the necessary "matter of 'degree.'" It turns the issue into one of the *heaviness* of the burden, rather than the *certainty* of the burden, as discussed in *Morales. Morales* in no way indicates that the "matter of 'degree'" is one of quantity rather than one of certainty. It presents none of the discussion that one would expect from the establishment of a new threshold standard. It does not discuss how courts might decide when the burden is sufficiently heavy to amount to a constitutional violation or present any factors to consider in making such a determination.

Even if an *ex post facto* punishment must meet a minimum threshold of onerousness in order to be unconstitutional, the supervision fee at issue in this case would clearly meet any such threshold. As the plaintiffs point out, they face total supervision fees ranging from $180.00 to $1,620.00, even without any increases in the monthly fee amount. These are not insignificant amounts of money. While these amounts may not be onerous to all, they are certainly not insignificant. Furthermore, the fact that the fee can be waived for those who cannot afford it does not lessen the certainty of the fee's burden on those who do not meet the waiver criteria. Even those who can afford to have their rights violated are entitled to constitutional protections.

Thus, I return to the critical question in this case: does the fee "make more burdensome the punishment for the crime?" A logical analysis of the nature of the supervision fee leads inexorably to the conclusion that it does actually increase the burdens of the punishment. The plaintiffs in this case were placed on probation as a result of convictions for either felonies or misdemeanors. Thus the probation was, for each plaintiff, part of his or her punishment for the offense. Under both state and federal law, probation is clearly considered to be punishment. *See,* e.g., R.I.Gen.Laws § 12–19–23.2 (1994 Reenactment) (listing various "intermediate punishments," including probation); *United States v. Bynoe,* 562 F.2d 126 (1st Cir.1977) ("[P]robation is ... a punishment imposed on the defendant, albeit a mild one....") (citing *Korematsu v. United States,* 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943)). At the time the plaintiffs were convicted (in all cases, before July 1, 1994, when the supervision fee went into effect), they received sentences, including probation, which did not include any imposition of a monetary payment. Thus, each plaintiff's punishment was made significantly more burdensome than it was at the time of sentencing as a result of the imposition of the fee. That is, the punishment included the probation, and the fee makes the probation more burdensome. Logically, therefore, the retrospective fee "makes more burdensome the punishment."

Looking at this another way, probation inherently involves the imposition of a series of conditions which impose constraints upon and restrict the behavior of probationers. The expectation of such conditions accompa-

nied the plaintiffs' original sentences. The supervision fee, however, is a condition of probation different from ordinary probation conditions. It is not merely a change in supervision policies or procedures but is rather a direct imposition of a substantial monetary obligation. This obligation is thus clearly an additional imposition far beyond the scope of the already-existing supervisory and conduct-oriented conditions of probation. Added after plaintiffs were already convicted and sentenced, it increases the burdens of the punishment in a very direct and concrete way.

■ The defendants argue that the supervision fee is not actually "punishment" but instead merely a civil fee which offsets the costs of services. This argument is severely undermined by an exclusion contained within the law itself. The law states, "Each sentenced offender committed to the care, custody, or control of the department of corrections shall reimburse the state for the cost or the reasonable portion thereof incurred by the state relating to such commitment." R.I.Gen.Laws § 42–56–38. However, the statute explicitly states, "provided however that a person so committed, awaiting trial and not convicted, shall not be liable for the reimbursement." *Id.* This exclusion makes clear that the law is not intended solely to provide reimbursement for costs expended by the state; if it were, then all persons upon whom those costs were expended would be liable, regardless of whether they ultimately were convicted. Such a result would, of course, be inappropriate. Instead, the law makes a clear distinction, as it must, between those who have been convicted and those who have not. This distinction makes the fee, at least in part, punitive in its intent and purpose.

Furthermore, the law makes clear that nonpayment of the supervision fee could be a factor taken into account in revoking the plaintiffs' probation, even though it could not be the sole cause. The Regulation states:

> The offender's probation or parole shall not be violated solely for non-payment of offender fees. However, in the event of other violations of the conditions of probation/parole, non-payment of the offender

fees may be brought to the attention of the court, formally or informally, as indicative of a lack of cooperation, failure to fulfill lawful obligations, or other pattern of non-compliance.

Department of Corrections Regulation 10.07.03, II.D.3. Under the holding of *Morales* discussed, *supra,* this possible link between non-payment of the fee and revocation of probation is too speculative and attenuated, in and of itself, to make the fee a violation of the *Ex Post Facto* Clause. However, the role of the fee in probationers' on-going interactions with the criminal justice system belies its alleged purely civil nature.

I note further that the probation supervision fee, even if it does serve the non-punitive goal of offsetting financial costs to the State, is inextricably linked to the plaintiffs' criminal convictions. The fact that these fees do not and could not be applied independent of a criminal conviction points strongly to the conclusion that they cannot be viewed as civil fees. They are part of the "law annexed to the crime," *Calder v. Bull,* 3 U.S. 386, 390, 1 L.Ed. 648 (1798), and therefore are limited by the law in effect when the offenses were committed under the *Ex Post Facto* Clause.

*See, e.g., In the Matter of the Petition of Delaware for a Writ of Mandamus,* 603 A.2d 814, 817–18 (Del.1992) (holding that imposition of assessment to be paid to Drug Rehabilitation Fund and increase in assessment to be paid to Victim Compensation Fund were penal in nature and violated *Ex Post Facto* Clause).

The defendants also present case law indicating that such supervision fees are, in general, legal. For instance, the defendants cite *Turner v. Nevada Bd. of State Prison Comm'rs,* 624 F.Supp. 318 (D.Nev.1985), for the proposition that the costs of supervision or imprisonment may be imposed on prisoners. However, in the present case, the plaintiffs do not dispute the constitutionality of these fees in general but only when applied *ex post facto.* Thus the case law the defendants cite regarding the propriety of the fees, independent of an *ex post facto* analysis, is immaterial.

The defendants also rely heavily on the unappealed, unpublished magistrate's recommendation in *Murray v. Phelps*, C.A. No. 88–0129–A (M.D.La.1993), in which the plaintiffs were represented *pro se*. *Murray* held that a statutory authorization for the payment of parole supervision fees was not a violation of the *Ex Post Facto* Clause. *Id.* I note, first, that this decision is in no way binding precedent for the present case. Furthermore, the *Murray* court discussed extensively the significance of the fact that the *parole* was not part of the plaintiffs' original sentences but was instead a *reduction* in the plaintiffs' original sentences. It pointed out that "[a] prisoner has no constitutionally protected liberty interest in diminution of or release prior to the expiration of a valid sentence," *id.* at 10 (citing *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)), and that " '[s]ince a prisoner has no right to diminution of sentence, the State is free to fashion the manner under which it may be granted,' " *id.* (quoting *McGhee v. Belisle*, 501 F.Supp. 189 (E.D.La.1980)). The present case, on the other hand, involves *probation*, which was part of the plaintiffs' original sentences. Thus, the probation supervision fee is an increase in the burdens of the original punishment, rather than a condition upon the plaintiffs' receipt of a decrease in punishment, as in *Murray*.

The *Murray* court states in a conclusory manner that the fee is not punitive because it is "imposed for the purpose of defraying the expense of supervising the parolee." *Id.* at 10. The court presents no substantiation for this assertion, and I therefore fail to find it persuasive. This type of conclusory analysis leads to a "slippery slope," where a state could, by simply designating funds for a particular cost or by careful labeling, impose almost any new fine without being subject to the constraints of the *Ex Post Facto* Clause.

The defendants also argue that the offender supervision fees are not retrospective and that they "are applied prospectively to persons receiving probation and parole services." However, this assertion obfuscates the true nature of the fees. All the plaintiffs in this case indisputably committed their crimes before the law went into effect. The law thus imposes an additional burden upon the plaintiffs that did not exist at the time of their actions which led to the convictions. In *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Supreme Court noted that a statute may be considered retrospective "even if it alters punitive conditions outside the sentence itself." *Id.* at 32, 101 S.Ct. at 966. It is immaterial that the supervision fee is not a direct increase in the term or burdens of the original sentence itself. Instead, the fee is a collateral enhancement of the burdens of the sentence, and it clearly "attaches legal consequences to a crime committed before the law took effect," *Weaver*, 450 U.S. at 31, 101 S.Ct. at 965. Thus, it is retrospective for the purposes of the *Ex Post Facto* Clause.

Finally, basic constitutional considerations dictate that I find that the offender supervision fee violates the *Ex Post Facto* Clause. Through the *Ex Post Facto* Clause, "the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver*, 450 U.S. at 28–29, 101 S.Ct. at 964 (citing *Dobbert v. Florida*, 432 U.S. 282, 298, 97 S.Ct. 2290, 2301, 53 L.Ed.2d 344 (1977)). This fundamental consideration bears heavily on the present case. When the plaintiffs in this case committed their offenses and were sentenced to punishment which included probation, they had neither warning nor expectation that the probation would involve paying out sums of money. Traditionally, probation conditions are those of *supervision*, of being monitored for good behavior and subjected to potentially greater penalties for misconduct. In the present case, plaintiffs simply could not have known that they would have monetary payments imposed upon them as a direct legal consequence of their probation. Thus they had neither fair warning of the monetary imposition nor the ability to rely upon the expectation of traditional probation conditions. Instead, the plaintiffs were taken by surprise when the supervision fee was imposed upon them, after they already had been convicted and sentenced for their offenses. This result undermines the fundamental tenets of the *Ex Post Facto* Clause.

I note again that I am not finding the fee unconstitutional when applied prospectively but only as applied to those offenders sentenced to probation before the effective date of the Regulation.

For the foregoing reasons, the defendants' Motion for Summary Judgment is denied and the plaintiffs' Motion for Summary Judgment is granted on the *ex post facto* question.

## V.

### STATUTORY AUTHORITY

 The plaintiffs allege that the Department of Corrections' imposition of probation supervision fees exceeds the statutory authority of R.I.Gen.Laws § 42–56–38. They argue that the statute does not provide any authority for levying supervision fees on people sentenced to probation prior to its effective date. The statute itself states only that its provisions "shall not be effective until the date the rules and regulations are filed with the office of the secretary of state." R.I.Gen. Laws § 42–56–38. Yet, the Department of Corrections has applied the supervision fee to all probationers, including those sentenced to probation prior to the statute's effective date.

 According to Rhode Island courts' interpretation of their own laws, "[a]s a general rule statutes operate prospectively from and after the effective date of the statute. It is only in the event that a statute contains clear and explicit language requiring retroactive application that a statute will be interpreted to operate retrospectively." *Avanzo v. Rhode Island Dep't of Human Serv.*, 625 A.2d 208, 211 (R.I.1993); *see Walsh v. Rhode Island Dep't of Transp.*, 637 A.2d 774, 775 (R.I.1994); *Lawrence v. Anheuser–Busch, Inc.*, 523 A.2d 864, 869 (R.I.1987). According to one court case, an exception to this presumption of prospective application exists for statutes deemed "procedural in nature." *Norton v. Paolino*, 113 R.I. 728, 733, 327 A.2d 275, 278 (1974). In *Norton*, the court found that a statute authorizing the substitution of a deceased motorist's insurer as defendant was substantive in nature because it affected the insurer's liability. *Id.* at 733–34, 327 A.2d 275. In the present case, the impo-

sition of probation supervision fees is substantive in nature, since the law affects the plaintiffs' property rights. As in *Norton*, the statute creates new susceptibility to suit and potential liability by allowing a probationer to be sued civilly for nonpayment of the fee. Thus, under Rhode Island statutory interpretation, the ambiguity of the statute regarding retroactive application requires that the statute apply only prospectively.

 The defendants argue, however, that the statute's interpretation by the Department of Corrections, as the governmental agency charged with enforcing this statute, must be given deference. Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, when the meaning of a statute is unclear, a federal agency's interpretation of the statute should be given deference if its interpretation is reasonable. 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). The defendants argue, correctly, that the statute in this case is ambiguous as to whether it applies to probationers who were sentenced prior to its effective date. The *Chevron* doctrine was discussed by the Rhode Island Supreme Court in only one case, *Pawtucket Power Assoc. Ltd. Part. v. City of Pawtucket*, 622 A.2d 452, 456 (R.I.1993), in which the court deferred to a declaratory judgment of the Public Utilities Commission finding that the appellant was not a "public utility."

The one Supreme Court case that has addressed agency interpretation of retroactivity did not give that interpretation deference. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). *Bowen* involved the Department of Health and Human Services' retroactive application of a Medicare administrative rule. The Court held that retroactive application was disfavored and that statutes would be presumed to apply prospectively unless expressly worded otherwise. *Id.* at 208, 109 S.Ct. at 471. The Court also stated,

a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by the Congress in express terms.... Even where some substantial

justification for retroactive rulemaking is presented, court should be reluctant to find such authority absent an express statutory grant.

*Id.* at 208–09, 109 S.Ct. at 471–72.[3] The Court refused to grant the agency deference because its interpretation was unsubstantiated and inconsistent. *Id.* at 212–13, 109 S.Ct. at 473–74. The Supreme Court's disapproval of retroactive statutory interpretation was made even more evident in *Landgraf v. U.S.I. Film Products,* which held that the Civil Rights Act of 1991 could not be applied retroactively. —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The Court held that a statute would not be applied retroactively unless the legislation makes that intent clear, stating: "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary consideration of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.,* at ——, 114 S.Ct. at 1497. The Court expressed concern with the result of retroactive legislation: "The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals." *Id.* Because the Supreme Court has expressed strong disapproval of retroactive laws generally and has not deferred to agency interpretation of retroactivity, no deference need be accorded the Department of Corrections in its interpretation of R.I.Gen. Laws § 42–56–38.

Moreover, the First Circuit has expressly recognized the limitations of *Chevron* deference:

In this realm of judicial expertise, the courts, not the agency, have the last word.... At any rate, the true measure of a court's willingness to defer to an agency's interpretation of a statute "depends, in the last analysis, on the persuasiveness of the interpretation, given all the attendant circumstances." *Massachusetts Dep't of Educ. v. United States Dep't of Educ.,* 837 F.2d 536, 541 (1st Cir.1988). "The simple fact that the agency has a position, in and of itself, is of only marginal significance." *Mayburg v. Secretary of HHS,* 740 F.2d 100, 106 (1st Cir.1984).

*United States v. 29 Cartons of an Article of Food,* 987 F.2d 33, 38 (1st Cir.1993). Because the Rhode Island Supreme Court has mentioned *Chevron* in only one case, *Pawtucket Power,* 622 A.2d at 456, it is unclear that Rhode Island law requires such deference. In *Avanzo,* the case involving the Rhode Island Department of Human Services' implementation of a retroactive welfare regulation, the court never discussed or granted *Chevron* deference to the agency's statutory interpretation. Therefore, I believe that if this issue were before the Rhode Island Supreme Court, it would evaluate the reasonableness of the Department of Corrections' interpretation of R.I.Gen.Laws § 42–56–38 without granting the Department deference.

The statute in question applies to "each sentenced offender committed to the care, custody of control of the department of corrections." The word "committed" could mean either "who has been committed," which would include existing probationers, or "who is committed," which would implicate only new probationers. No legislative history has been submitted to this Court regarding the legislators' intent. Because both Rhode Island law and federal law clearly require that statutes not be applied retroactively unless so stated expressly, this Court finds that interpreting the statute retroac-

---

3. The *Bowen* decision appears to be in tension with *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), which held that changes in the law should be applied to pending appellate cases. The Supreme Court has explained subsequently that *Bradley* is limited to laws relating to prospective relief, jurisdic-

tion, or procedure. *Landgraf v. U.S.I. Film Products,* —— U.S. ——, ——–——, 114 S.Ct. 1483, 1501–04, 128 L.Ed.2d 229 (1994). Since, as discussed earlier, R.I. Gen. Laws § 42–56–38 is not a procedural law, the *Bradley* holding is inapplicable.

tively would be unreasonable. Interestingly, the Department of Corrections' own regulations appear to indicate that the fees are to be collected from *new* probationers. The regulations provide that the first step of fee assessment is completion of the Supervision Fee form and a review of assessment with the offender. This takes place "[u]pon *intake* of an adjudicated offender placed under probation/parole supervision." Department of Corrections Regulation 10.07.03, II.A.1 (emphasis added).

■ The defendants argue that charging probation supervision fees to people who were sentenced to probation prior to July 1, 1994 is not retroactive application of the statute. They argue that retroactivity would be implicated only if probationers were charged fees for months on probation prior to that date. However, the Supreme Court has stated that " 'every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective....' " *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1499 (quoting with approval *Society for Propagation of the Gospel v. Wheeler,* 22 F.Cas. 756 (C.C.D.N.H. 1814) (No. 13,156)); *see also Sturges v. Carter,* 114 U.S. 511, 519, 5 S.Ct. 1014, 1018, 29 L.Ed. 240 (1885). In the present case, the plaintiffs' sentence to probation was the past transaction, on which R.I. Gen. Laws § 42–56–38 imposes a new obligation to pay supervision fees.

■ Case law indicates that retroactivity occurs when new laws are applied to processes that began before the law was enacted. For example, the Supreme Court held that a new law establishing the interest rate for judgments while appeals are pending was improperly retroactive when applied to judgments that had been awarded prior to the new law. *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 838–39, 110 S.Ct. 1570, 1577–78, 108 L.Ed.2d 842 (1990). Thus, even when the interest on the judgments was still accumulating at the time of the law's passage, the key factor was when the interest accumulation began. This is parallel to the instant case, where the plain-

tiffs' probation period began before the law was effective but continued after its implementation. Likewise, the Rhode Island Supreme Court found that a new law establishing a different court for motor vehicle violation appeals was improperly retroactive when applied to cases where the initial violation determination was prior to the law's enactment, even though the appeals at issue were initiated after the enactment. *Walsh,* 637 A.2d at 775. In *Avanzo,* a law was passed which made general assistance recipients ineligible for benefits once they received six months of benefits within a year period. 625 A.2d at 209. The Rhode Island Supreme Court found that the law was retroactively applied because the agency counted months of benefits received prior to the law's enactment in determining recipients' ineligibility after the law's enactment. *Id.* at 211. These cases demonstrate that retroactivity includes changing the legal consequences of processes that began prior to the law's enactment. *See also Landgraf,* —— U.S. at ——, 114 S.Ct. at 1499. In the present case, charging supervision fees to people who were sentenced to probation prior to the statute's effective date is thus a retroactive application of the law.

Because both Rhode Island and federal courts have repeatedly disfavored retroactive application of statutes without clear evidence of the legislators' intent, this Court finds that the defendants have exceeded the statutory authority of R.I. Gen. Laws § 42–56–38 in assessing supervision fees to probationers sentenced prior to the date that the statute went into effect. For the foregoing reasons, the plaintiffs' Motion for Summary Judgment on the issue of statutory authority is granted and the defendants' Motion for Summary Judgment on this issue is denied.

## VI.

### PROCEDURAL DUE PROCESS

■ The plaintiffs also claim that the defendants, acting under R.I. Gen. Laws § 42–56–38, have violated their rights to procedural due process under the Fourteenth Amendment of the United States Constitution and under Art. 1 § 2 of the Rhode

Island Constitution.[4] A governmental action which deprives an individual of a liberty or property interest requires due process of law. In this case, the Department of Corrections, a governmental body, has charged the plaintiffs a fifteen dollar offender supervision fee for each month they are on probation. The plaintiffs have a property interest in this supervision fee because they must turn over part of their monetary property to the state or else face civil suit. *See, e.g., In re Nineteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litigation,* 982 F.2d 603 (1st Cir.1992) (property interest in distribution of attorneys' fees from fund); *Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 570 (3d Cir.1985) (*en banc*) (property interest in monetary court sanction); *Walter v. City of Chicago,* 1992 WL 88457, *3 (N.D.Ill.) (property interest in $50 traffic ticket); *Hann v. Carson,* 462 F.Supp. 854, 861 (M.D.Fla.1978) (property interest in being free from unjustified payments of charges and fees).[5]

In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court set out a balancing test for determining when procedural due process has been violated. The court must weigh "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335, 96 S.Ct. at 903.

The question in the instant case is whether the procedures involved in imposing probation supervision fees and granting waivers for financial hardship constituted due process of law for the plaintiffs. Unfortu-

nately, the parties' Agreed Statement of Facts does not include any details of the waiver procedure, either as designed or as implemented. In order to weigh accurately the *Mathews* factors, this Court needs additional information, such as if and how probationers may submit evidence of their financial hardship, who evaluates this evidence and by what criteria, and whether probationers can request a second review if denied waivers. *Goldberg v. Kelly,* 397 U.S. 254, 268–71, 90 S.Ct. 1011, 1020–22, 25 L.Ed.2d 287 (1970); *see also Amsden v. Moran,* 904 F.2d 748, 753 (1st Cir.1990), *cert. denied,* 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991) ("[T]he proper focus must be on the manner in which the state has acted: 'how and when' the alleged deprivation was effected."). The plaintiffs here claim that the Due Process Clause requires that the Department of Corrections provide individualized pre-assessment waiver determinations. In order to evaluate the necessity of additional procedures, this Court must weigh the reduction of error which these procedures would effect against the cost to the state of establishing them. *Mathews,* 424 U.S. at 346–48, 96 S.Ct. at 908–09. However, neither party has alleged the error rate or cost associated with current or proposed procedures.

The plaintiffs also allege that due process was violated because they were never notified of the availability of waivers. *See Goldberg,* 397 U.S. at 267–68, 90 S.Ct. at 1020 ("[T]hese [due process] principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination...."). Depending on the circumstances, due process may require notice of the right to appeal or, in this case, of the right to a waiver. *Raper v. Lucey,* 488 F.2d 748 (1st Cir.1973). According to the Agreed Statement of Facts, the parties disagree as to whether the plaintiffs inquired about their

---

4. As the drafters of the Rhode Island Constitution intended the Due Process Clause of the Rhode Island Constitution to parallel the Due Process Clause of the Fourteenth Amendment of the United States Constitution, *Jones v. Rhode Island,* 724 F.Supp. 25, 34–35 (D.R.I.1989), I will address these claims together.

5. This case is clearly distinguishable from *Lee v. Life Insur. Co. of No. Amer.,* where imposition of a university health insurance fee was found to be a voluntary purchase of services, not a state deprivation of a property or liberty interest. 23 F.3d 14, 20–21 (1st Cir.1994). In this case, probation is a mandatory punishment and the supervision fees are involuntary.

obligation to pay the fee and as to what information the probation offices gave them. Clearly, the availability of information about waiver procedures is highly relevant in determining whether the Due Process Clause was satisfied in this case.

Because material issues of fact remain unclear and disputed, the plaintiff's procedural due process claim cannot be decided on summary judgment. Given the facts before the Court, both the plaintiffs' and the defendants' Motions for Summary Judgment are denied. However, since the regulation as applied to the plaintiffs is now found invalid on *ex post facto* and statutory authority grounds, the merits of the plaintiffs' procedural due process claim need not be resolved.

## VII.

### *SUBSTANTIVE DUE PROCESS*

 Substantive due process focuses on the result of the governmental action, not its procedures. *Amsden,* 904 F.2d at 754. The First Circuit has stated that a violation of substantive due process occurs when state action is "egregiously unacceptable, outrageous, or conscience-shocking." *Id.* In this case, the Department of Corrections has imposed a fifteen dollar monthly supervision fee on probationers retrospectively. Regardless of the waiver procedures used, this monetary penalty cannot be considered egregious or conscience-shocking. *Cf. Anyon v. Mach,* 14 F.3d 44 (1st Cir.1993) (withdrawing inmate from short-term release program did not violate substantive due process). Therefore the plaintiffs' allegations of substantive due process violations are unsupported, and the defendants' motion for summary judgment on this claim is granted.

## VIII.

### *CONCLUSION*

For the reasons discussed above, the plaintiffs' Motion for Summary Judgment is granted as to their *ex post facto* claim and as to their statutory authority claim. The defendants' Motion for Summary Judgment is granted as to the substantive due process claim. Both the plaintiffs' and the defen-

dants' Motions for Summary Judgment on the procedural due process claim are denied. The defendant George Vose, Jr., is granted qualified immunity and is therefore liable only in his official capacity. Again, I clarify that the Regulation is not held unconstitutional as applied to offenders sentenced to probation after July 1, 1994.

WHEREFORE this Court declares that the implementation of Regulation 10.07.03 with regard to offenders sentenced to probation prior to the Regulation's effective date is unconstitutional as violating the *Ex Post Facto* clause and exceeds the statutory authority granted by R.I. Gen. Laws § 42–56–38;

FURTHER this Court awards reasonable attorneys' fees and costs of litigation to the plaintiffs, pursuant to 42 U.S.C. § 1988(b).

SO ORDERED.