No. 76,511

STANLEY D. ROARK and/or NOEL LOGAN, *Appellants*, v. BILL GRAVES, GOVERNOR OF KANSAS, *et al.*, *Appellees.*

(936 P.2d 245)

Opinion filed April 18, 1997.

*Paula D. Hofaker*, of Logan, argued the cause and was on the brief for appellants.

*Robert E. Wasinger*, of Kansas Department of Corrections, Norton Correctional Facility, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, C.J.: This is a 42 U.S.C. § 1983 (1994) action by certain inmates of the Norton Correctional Facility challenging the assessment of monthly service fees against them for the administration of their trust accounts pursuant to K.A.R. 44-5-115(a) (1996 Supp.) on the grounds that it is violative of their due process rights and the Ex Post Facto Clause of the United States Constitution. The district court upheld the assessment of the fees, and plaintiffs appeal therefrom.

The statute from which the regulation arises is K.S.A. 1996 Supp. 75-52,139, passed by the legislature in 1994 (L. 1994, ch. 227, § 10). It provides:

"The secretary of corrections is hereby authorized to adopt rules and regulations under which offenders in the secretary's custody may be assessed fees for various services provided to offenders and for deductions for payment to the crime victims compensation fund."

From the statute, the Secretary of Corrections promulgated K.A.R. 44-5-115 (1996 Supp.), the pertinent part of which provides:

"(a) Each inmate in the custody of the secretary of corrections shall be assessed a charge of one dollar each payroll period, not to exceed $12.00 per year, as a fee for the facility administering the inmate's trust account. The facility shall be authorized to transfer the fee from each inmate's account from the balance existing on the first of each month. In the event an inmate has insufficient funds on the first of the month to cover this fee, the fee shall be transferred as soon as the inmate has sufficient funds in the account to cover the fee. All funds received by the facility pursuant to this provision shall be paid on a quarterly basis to the crime victims compensation fund."

Plaintiffs contend that this regulation is violative of their due process rights under the United States Constitution by virtue of its requirement that the fees collected are to be paid to the crime victims compensation fund as opposed to being used to defray the costs of administering the trust accounts. This identical issue has been determined adversely to plaintiffs herein in *Weinlood v. Simmons*, 262 Kan. 259, 936 P.2d 238 (1997), which case is controlling on this issue.

Plaintiffs next argue that this regulation violates the Ex Post Facto Clause of the United States Constitution by retroactively imposing punishment on inmates after the commission of their crimes.

" 'The United States Constitution prohibits the legislative enactment of any ex post facto law. U.S. Const., art. I, §10. Two critical elements must be present for a criminal or penal law to be ex post facto: It must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. A criminal law disadvantages the offender if it punishes an act not punishable when committed, imposes additional punishment to that then prescribed, aggravates the crime, or alters the legal rules of evidence.' " *State v. LaMunyon*, 21 Kan. App. 2d 281, 285, 898 P.2d 1182 (1995), *aff'd* 259 Kan. 54, 911 P.2d 151 (1996) (quoting *Lamb v. Kansas Parole Board*, 15 Kan. App. 2d 606, Syl. ¶ 8, 812 P.2d 761 [1991]).

"The term 'ex post facto,' as used in the constitution, relates to criminal punishment and has no relation to other retrospective laws." *In re Clark*, 86 Kan. 539, 541, 121 Pac. 492 (1912).

When an inmate challenges a prison regulation as impinging on the inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *LeVier v. Nelson*, 21 Kan. App. 2d 172, 176, 897 P.2d 188 (1995) (citing *Thorn-*

*burgh v. Abbott*, 490 U.S. 401, 104 L. Ed. 2d 459, 109 S. Ct. 1874 [1989]; and *Turner v. Safley*, 482 U.S. 78, 96 L. Ed. 2d 64, 107 S. Ct. 2254 [1987]).

Prison officials are given wide latitude in matters concerning the administration of correctional facilities. Such discretion should not be interfered with by the court in the absence of abuse or unless exercised unlawfully, arbitrarily, or capriciously. See *Breier v. Raines*, 221 Kan. 439, 559 P.2d 813 (1977); *Levier v. State*, 209 Kan. 442, 497 P.2d 265 (1972).

"This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute." *State v. Durrant*, 244 Kan. 522, 534, 769 P.2d 1174, *cert. denied* 492 U.S. 923 (1989).

Discussion on this point must begin with plaintiffs' basic assumption that this is a penal or criminal statute. "Criminal statutes" are defined as "[f]ederal or state laws enacted by legislative bodies which define, classify, and set forth punishments for specific crimes." Black's Law Dictionary 337-38 (5th ed. 1979). "Criminal sanctions" are "[p]unishments attached to conviction of crimes such as fines, probation and sentences." Black's Law Dictionary 337. Using these definitions, this statute and its derivative regulation are neither criminal laws nor criminal sanctions. The fees are not attached to the criminal convictions but are attached to the inmate trust accounts without regard to what crimes were committed or what punishment resulted. K.S.A. 1996 Supp. 75-52,139 and K.A.R. 44-5-115(a) (1996 Supp.) allow.the Secretary of Corrections to collect fees for administration of inmate trust accounts.

Additionally, the prison regulation is reasonably related to legitimate penological interests. The monthly charge of $1 is assessed as a fee for the facility administering the inmate's trust account. The legislature has charged the Department of Corrections with the following:

"The legislative purpose in enacting this act shall be deemed to be establishment of a policy of treatment of persons convicted of felonies in this state by placing maximum emphasis on rehabilitation of each such person while in the custody of the state or under the jurisdiction of the courts of the state, consistent

with the interests and safety of the public, so that a maximum of persons so convicted may be returned to private life in the communities of the state with improved work habits, education, mental and physical health and attitudes necessary to become and remain useful and self-reliant citizens. It is the intent of the legislature that judges, the secretary of corrections, his or her agents, subordinates and employees and the Kansas adult authority, its agents, subordinates and employees will construe and apply this act and acts of which it is amendatory or supplemental liberally to rehabilitate, train, treat, educate and prepare persons convicted of felony in this state for entry or reentry into the social and economic system of the community upon leaving the custody of these state agencies and officers." K.S.A. 75-5201.

In testifying before the Senate Judiciary Committee on March 18, 1994, in support of H.B. 2832, from which K.S.A. 1996 Supp. 75-52,139 was born, defendant Secretary stated, in pertinent part:

"Assessing fees to offenders is based on a belief that offenders should be accountable for their actions, and contributing to the costs of incarceration or supervision are important components of establishing that accountability."

K.A.R. 44-5-115(a) (1996 Supp.) is reasonably related to these goals. Plaintiffs are charged a service fee for the administration of their accounts. This procedure reasonably prepares plaintiffs for reentry into the social and economic system of the community upon leaving the correctional institution.

Plaintiffs assert that *Taylor v. State of R.I. Dept. of Corrections*, 908 F. Supp. 92 (D.R.I. 1995), has decided this issue in their favor. Although there are some similarities to this case, *Taylor* has limited applicability.

In *Taylor*, the Rhode Island Department of Corrections promulgated a regulation, under authority of state statute, requiring that a monthly $15 supervision fee be assessed on probationers and parolees, effective July 1, 1994. It also provided for a financial hardship waiver of the fee.

Taylor and four other plaintiffs, all convicted and sentenced to probation before July 1, 1994, received a letter from the department of corrections notifying them that the fee would be imposed beginning July 1, 1994. No hardship waivers were mentioned in the letter. Fees were assessed which plaintiffs refused to pay. Plaintiffs claimed that imposition of the supervision fee on those who

were sentenced to probation prior to the effective date of the regulation violated the Ex Post Facto Clause.

The court concluded that there was an ex post facto violation. In reaching this conclusion, several facts were critical to the court. Pertinent among them, the court believed that the fee did in fact increase the burdens of the punishment. Because the plaintiffs were placed on probation as a result of their convictions, probation was the punishment. At the time they sought and received probation, a monetary payment for supervision was not required. Thus, the court concluded, each plaintiffs' punishment was made significantly more burdensome as a result of the later imposition of the fee. 908 F. Supp. at 100.

Unlike the fees at issue in *Taylor*, the fees here, on inmate accounts, are not linked to plaintiffs' punishments. The fees herein are service fees for administering the inmates' trust accounts.

We find this claim to be without merit. The fee is charged for services rendered, has not been shown to be excessive, is reasonably related to legitimate penological goals, and is not an additional punishment.

Next, plaintiffs argue enforcement of K.A.R. 44-5-115(a) (1996 Supp.) violates their plea agreements with the State. There is nothing in the record establishing what the plaintiffs' plea agreements were. Plaintiffs rely on *Dickerson v. Kansas Dept. of Revenue*, 253 Kan. 843, 863 P.2d 364 (1993). In *Dickerson*, defendant entered into a plea agreement which involved, *inter alia*, a negotiated sum of $350 for the drug tax (K.S.A. 1996 Supp. 79-5202). Later, the Department of Revenue attempted to up the ante on the drug tax. We held the Department was estopped to collect that additional tax. The *Dickerson* case is readily distinguishable. A particular amount of drug tax was agreed to as a part of the plea bargain. In the case before us, administrative fees for services charged to all correctional inmates are at issue. We find no merit in this issue.

The judgment of the district court is affirmed.