Michael J. TAYLOR, Plaintiff,

v.

Kathleen SEBELIUS, et al., Defendants.

No. CIV.A. 04–3063–KHV.

United States District Court, D. Kansas.

Dec. 29, 2004.

Michael J. Taylor, Winfield, KS, pro se.

Brian D. Sheern, Kansas Attorney General, Topeka, KS, Julie L. St. Peter, El Dorado, KS, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff, an inmate at the Winfield Correctional Facility in Winfield, Kansas, brings suit against Kathleen Sebelius (Governor of the State of Kansas), Phill Kline (Attorney General of the State of Kansas) and Roger Werholtz (Secretary of the Kansas Department of Corrections).[1] Plaintiff alleges that the Kansas state regulation which imposes a $25.00 monthly supervision fee on parolees is an unlawful bill of attainder and violates his rights under the *ex post facto* clause and the Fifth, Eighth and Fourteenth Amendments of the United States and Kansas Constitutions. This matter is before the Court on the *State Defendants' Motion For Summary Judgment* (Doc. # 31) filed September 10, 2004. For reasons stated below, the Court sustains defendants' motion.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine

---

1. Plaintiff has also filed claims against John and Jane Doe defendants who are responsible for instituting and implementing corrections policies, procedures and practices.

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on

ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Rule 56(e) also requires that "copies of all papers or parts thereof referred to in an affidavit be attached thereto or served therewith." To enforce this rule, the Court ordinarily does not strike affidavits but simply disregards those portions which are not shown to be based upon personal knowledge or otherwise do not comply with Rule 56(e). *Maverick Paper Co. v. Omaha Paper Co., Inc.*, 18 F.Supp.2d 1232, 1234–35 (D.Kan.1998).

In *pro se* prisoner litigation, the Tenth Circuit endorses the completion and filing of a "Martinez report" where the prison constructs an administrative record which details the factual investigation of the events at issue. *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir.1978). The Martinez report is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence. *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.1997). The *pro se* prisoner's complaint, when sworn and made under penalty of perjury, is also treated as an affidavit; like the Martinez report, it serves as evidence for a summary judgment determination. *See id.*

### Factual Background

For purposes of defendants' motion for summary judgment, the following facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.

On January 28, 1985, in the District Court of Sedgwick County, Kansas, plaintiff pled guilty to the sale of cocaine. Plaintiff received a suspended sentence. On September 2, 1987, in the District Court of Sedgwick County, plaintiff pled guilty to possession of cocaine. Plaintiff again received a suspended sentence. On January 29, 1990, in the District Court of Sedgwick County, plaintiff pled guilty to possession of cocaine after a previous conviction. Plaintiff received a sentence of 15 years to life in prison.[2] On March 15, 1990, plaintiff was placed in the custody of the Kansas Department of Corrections ("KDOC").

Nearly eight years later, on March 3, 1998, the Kansas Parole Board ("KPB") released plaintiff on parole. Pursuant to K.A.R. § 44–5–115(b)—which imposes parole supervision fees in the amount of $25.00 per month—KDOC charged plaintiff monthly supervision fees of $25.00 for October and November of 1999.[3] On April 14, 2000, plaintiff returned to KDOC custody, apparently to await a parole revocation hearing.[4] On June 16, 2000, plaintiff had a balance in his inmate trust account of $35.00. KDOC deducted $10.00 for an outstanding urinalysis fee and $4.00 for outstanding medical fees, leaving a balance of $21.00. On June 19, 2000, plaintiff received $102.05 in his inmate account. That same day, pursuant to Internal Management Policy and Procedure ("IMPP") § 04–106—which provides that outstanding fees from a previous incarceration or from post-incarceration supervision shall be assessed upon the offender's re-entry into KDOC custody—KDOC deducted $50.00 from plaintiff's inmate trust account to satisfy his supervision fees for October and November of 1999, leaving a balance of $73.05.[5] On June 21 and July 19, 2000,

---

2. In March of 1990, the district court found that plaintiff had violated the terms of his suspended sentences on the 1985 and 1987 convictions. On these convictions, the district court re-sentenced plaintiff to an indeterminate sentence of five to 20 years, to run consecutively with each other and the sentence on the 1990 conviction. In June of 1990, the district court reduced plaintiff's sentence on the 1990 conviction to five to 20 years in prison, to run consecutively with the sentences on the 1985 and 1987 convictions.

3. Indigent offenders are exempt from the payment of such fees. Plaintiff apparently was not required to pay supervision fees for additional months because he was indigent.

In his verified complaint, plaintiff states that he satisfied the remaining monthly payments from March of 1999 through February of 2000. *See Complaint* (Doc. # 1) ¶ 18. The "Inmate Fee History" documents which are attached to plaintiff's complaint do not reflect that except for October and November of 1999, KDOC assessed any supervision fees.

*See* Inmate Fee History, attached to *Complaint* (Doc. # 1); *see also* Listing of UA & Supervision Fees, attached as Exhibit F1 to *Martinez Report* (Doc. # 26).

4. On May 24, 2000, plaintiff's parole was revoked for failure to report for an office visit, failure to report an arrest to his parole officer, and using marijuana and cocaine.

5. IMPP § 04–106 was originally implemented on December 7, 1998. *See* IMPP § 04–106, attached as Exhibit A to *Defendants' Response To The Court's November 23, 2004 Order To Supplement The Record With IMPP 04–106* (Doc. # 44 in consolidated case *Miller v. Sebelius*, No. 04–3053). IMPP § 04–106 has been amended several times since December 7, 1998, but the substantive policy has remained the same: collection of outstanding supervision fees when an offender re-enters KDOC custody or as soon as the offender is able to pay the outstanding fees. *See* Exhibits A through E to *Defendants' Response To The Court's November 23, 2004 Order To Supple-*

plaintiff purchased canteen items totaling $19.99 and $19.29 respectively.

On November 2, 2000, the KPB again released plaintiff on parole. On June 29, 2001, plaintiff returned to KDOC custody, apparently to await a parole revocation hearing.[6]

On September 3, 2002, the KPB again released plaintiff on parole and KDOC charged plaintiff a $25.00 monthly supervision fee for October of 2002. On October 30, 2002, plaintiff returned to KDOC custody, apparently to await a parole revocation hearing.[7] On January 31, 2003, plaintiff received incentive pay of $16.80 which was deposited in his inmate trust account. On February 3, 2003, KDOC deducted an account administration fee of $1.00. On February 13, 2003, plaintiff received $10.00 from an outside source. That same day, KDOC deducted $25.00 from plaintiff's inmate trust account to satisfy his supervision fee for October of 2002. On February 20, 2003, plaintiff purchased canteen items totaling $3.36. On February 25, 2003, plaintiff received $15.00 from an outside source. On February 27, 2003, plaintiff purchased canteen items totaling $12.31.

Plaintiff is currently in KDOC custody.

Plaintiff alleges that (1) K.A.R. § 44–5–115(b) violates the constitutional prohibition on *ex post facto* laws because at the time of his offense, Kansas did not impose a supervision fee; (2) as applied to him, K.S.A. § 75–52, 139 and K.A.R. § 44–5–115(b) are unlawful bills of attainder; (3) by deducting supervision fees from his prison inmate account, defendants subjected him to cruel and unusual punishment,

unlawfully took his property in violation of the takings clause of the Fifth Amendment, and violated his rights to procedural due process and equal protection under the Fifth and Fourteenth Amendments. *See Complaint* (Doc. # 1) at 5–17.

### *Analysis*

Before addressing plaintiff's claims, the Court briefly outlines the relevant statutory and regulatory provisions. In 1994, the Kansas legislature passed a bill which authorized the secretary of KDOC to impose certain fees on inmates and former inmates on supervision. Specifically, the law provides as follows:

> The secretary of corrections is hereby authorized to adopt rules and regulations under which offenders in the secretary's custody may be assessed fees for various services provided to offenders and for deductions for payment to the crime victims compensation fund.

K.S.A. § 75–52, 139. Based on the statute, the secretary of KDOC passed a regulation which provides in relevant part as follows:

> (1) Each offender under the department's parole supervision ... shall be assessed a supervision service fee of ... $25.00 dollars per month. * * *
>
> (2) A portion of the supervision service fees collected shall be paid to the designated collection agent or agents according to the current service contract, if applicable. Twenty-five percent of the remaining amount collected shall be paid on at least a quarterly basis to the crime victims' compensation fund. The re-

---

*ment The Record With IMPP 04–106* (Doc. # 44 in consolidated case *Miller v. Sebelius*, No. 04–3053).

6. On July 17, 2001, plaintiff's parole was revoked for failure to report to his probation officer, failure to inform his parole officer of

his residence, failure to submit a urine sample and failure to complete substance abuse counseling.

7. On December 23, 2002, plaintiff's parole was revoked for using cocaine and failure to remain in the parole office lobby as ordered.

maining balance shall be paid to the department's general fees fund for the department's purchase or lease of enhanced parole supervision services or equipment including electronic monitoring, drug screening, and surveillance services.

(3) Indigent offenders shall be exempt from this subsection of the regulation, as set forth by criteria established by the secretary in an internal management policy and procedure.

K.A.R. § 44–5–115(b)(1)–(3).

IMPP § 14–107 sets forth procedures to collect supervision fees. *See* IMPP § 14–407, attached as Exhibit J to *Martinez Report* (Doc. # 26). It provides that indigent offenders are not required to pay a supervision fee. *See id.* at 1. IMPP § 12–127 provides that KDOC shall issue basic personal hygiene items (including a soft toothbrush, toothpaste, disposable razor, comb or pick and soap) to indigent inmates (any inmate with a cumulative spendable amount of less than $12.00). *See* IMPP § 12–127, attached as Exhibit M to *Martinez Report* (Doc. # 26).

IMPP § 04–106 provides that outstanding fees or charges from a previous incarceration or post-incarceration supervision shall be assessed upon the offender's reentry into KDOC custody. *See* IMPP § 04–106.

## I. Cruel And Unusual Punishment Claim

■ Plaintiff alleges that by deducting supervision fees from his prison inmate account, defendants subjected him to cruel and unusual punishment. *See Complaint*

(Doc. # 1) at 12–16. Specifically, plaintiff alleges that because of the deductions, he was subjected to "undue hardships" and "denied the opportunity to maintain his sanitary hygienic needs." *Id.* at 12. Defendants argue that they are entitled to summary judgment because (1) plaintiff could afford supplies for basic hygiene; (2) if plaintiff could not afford such supplies, he was entitled to free basic hygiene supplies; and (3) plaintiff cannot show that defendants acted with deliberate indifference to his health and safety. *See Defendants' Memorandum* (Doc. # 32) at 10–13.

As to defendants' first argument, a reasonable jury could find that plaintiff was unable to purchase basic hygiene items from February 13 through February 25, 2003, when he had approximately $3.00 in his inmate trust account. The parties have not addressed how much basic hygiene supplies cost, but plaintiff has not established a genuine issue of material fact whether—for any other period—he had insufficient funds to purchase basic hygiene supplies.[8]

Although a reasonable jury could find that plaintiff was unable to purchase basic hygiene supplies for the brief period from February 13 to February 25, 2003, plaintiff has not alleged or shown that defendants denied him free basic hygiene supplies during that time—or, indeed, at any time. IMPP § 12–127 provides that indigent inmates shall receive basic personal hygiene items including a soft toothbrush, toothpaste, disposable razor, comb or pick and soap. As of February 13, 2003, plaintiff qualified for indigent status under IMPP § 12–127 because his cumulative spendable amount for the month was $0.80.[9] Plaintiff

---

**8.** Depending on the cost of basic hygiene supplies, $3.00 could be sufficient to purchase them at the prison canteen. For purposes of this analysis, the Court merely assumes that $3.00 would not be sufficient to do so.

**9.** An inmate's "cumulative spendable amount" is determined by adding all deposits made during the month to the beginning account balance and subtracting fines, fees, restitution, garnishments, forced savings and

has not alleged, however, that he asked for basic hygiene supplies. The Tenth Circuit recently rejected an Eighth Amendment claim based on similar allegations. *See Sellers v. Worholtz,* 86 Fed.Appx. 398, 2004 WL 119882 (10th Cir.2004). In *Sellers,* plaintiff alleged that the automatic deduction of fees from his inmate account to satisfy his obligations under K.A.R. § 44–5–115 constituted cruel and unusual punishment. The Tenth Circuit held that plaintiff could apply every month for an indigent package which contained necessary hygiene products, and that he therefore failed to state a claim for violation of the Eighth Amendment. *Id.* at 400. This Court likewise finds that because plaintiff has not alleged or shown that defendants denied his request for basic hygiene supplies, defendants are entitled to summary judgment on this claim.

■ Even if plaintiff alleged and could show that defendants denied him basic hygiene supplies, he has not shown that defendants acted with deliberate indifference to his health and safety. The Constitution does not permit inhumane prisons, but neither does it mandate comfortable ones. To prevail on his Eighth Amendment claim, plaintiff must demonstrate that prison officials have shown "deliberate indifference" to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, plaintiff must show that defendants knew of and disregarded an excessive risk to inmate health and safety. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiff has not pointed to evidence that defendants denied him basic hygiene items available to

indigent inmates or that such a deprivation for some seven days placed his health and safety at risk. Moreover, to the extent that the temporary deprivation of basic hygiene items could constitute an Eighth Amendment violation, plaintiff has not shown that defendants were aware of an "excessive risk" to his health and safety. *Id.* Because plaintiff has not cited evidence which supports his allegation that his confinement was cruel and unusual, the Court sustains defendants' motion for summary judgment on this claim. *See Words v. Graves,* 1997 WL 298458, *2–3 (D.Kan.1997) (no claim for cruel and unusual punishment where plaintiff did not allege inability to pay medical co-pay under K.A.R. § 44–5–115(c) and regulation had exception for indigent prisoners); *see also Waters v. Bass,* 304 F.Supp.2d 802, 811 (E.D.Va.2004) (no cruel or unusual punishment claim based on deduction of room and board fees from inmate account); *Breakiron v. Neal,* 166 F.Supp.2d 1110, 1115–16 (N.D.Tex.2001) (health care deductions from inmate trust account not deliberate indifference).

## II. *Ex Post Facto* Claim

■ Plaintiff alleges that K.A.R. § 44–5–115(b) violates the constitutional prohibition on *ex post facto* laws because at the time of his offense, Kansas did not impose a supervision fee. *See Complaint* (Doc. # 1) at 5–7; *see also* U.S. Const., art. 1, § 9, cl. 3; art. 1, § 10, cl. 1. Defendants argue that they are entitled to summary judgment because (1) supervision fees are not punitive in nature; and (2) supervision fees are imposed for valid penological reasons which include offender accountability and rehabilitation. "An ex post facto law is 'any law which imposes a punishment for

payments or encumbrances for court filing fees applied during the month. *See* IMPP § 12–127 at 1. Plaintiff's beginning balance for February was $16.80 and one deposit for $10.00 was made on February 13. *See* Exhib-

it L to Martinez Report (Doc. # 26). On February 3 and 13, 2003, KDOC deducted a $1.00 administrative fee and a $25.00 supervision fee respectively. *See id.*

an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Raymer v. Enright*, 113 F.3d 172, 174 (10th Cir.1997) (quoting *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). In determining whether a new regulation violates the *ex post facto* clause, the Court focuses on whether the change alters the definition of criminal conduct or increases the penalty by which a crime is punishable. *See Cal. Dep't of Corrs. v. Morales*, 514 U.S. 499, 506–07 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).

The Kansas Supreme Court has held that K.A.R. § 44–5–115(a), which imposes a $1.00 monthly fee to administer an inmate trust account, does not violate the *ex post facto* clause. *See Roark v. Graves*, 262 Kan. 194, 196–98, 936 P.2d 245, 247–48 (1997). Specifically, *Roark* held that "[t]he fee is charged for services rendered, has not been shown to be excessive, is reasonably related to legitimate penological goals, and is not an additional punishment." *Id.* at 198, 936 P.2d at 248. *Roark* relied in part on the testimony of Charles Simmons, former Secretary of KDOC, who testified before the Senate Judiciary Committee in support of the bill which authorized the collection of fees for services from offenders in KDOC custody. Simmons testified in part as follows:

> Assessing fees to offenders is based on a belief that offenders should be accountable for their actions, and contributing to the costs of incarceration or supervision are important components of establishing that accountability.

*Id.* at 196, 936 P.2d at 247–48. *Roark* concluded that K.A.R. § 44–5–115(a) is reasonably related to the goals outlined by Simmons and that the procedure reasonably prepares inmates for reentry into the social and economic system of the commu-

nity upon leaving the correctional institution. *See id.* at 196, 936 P.2d at 248.

Like the monthly maintenance fee in *Roark*, the $25.00 monthly supervision fee for parolees does not violate the *ex post facto* clause. Both fees are based on the same authorizing statute, K.S.A. § 75–52, 139, and are part of the same regulation, K.A.R. § 44–5–115(a)–(b). Based on *Roark* and other cases which have addressed parole supervision fees, the monthly supervision fee cannot be described as punitive in nature. *See Glaspie v. Little*, 564 N.W.2d 651, 654 (N.D.1997) ($30.00 monthly fee to defray cost of supervision is civil fee for services); *Taylor v. State of R.I.*, 101 F.3d 780, 783–84 (1st Cir.1996) ($15.00 monthly supervision fee was civil, not criminal, in nature); *Frazier v. Mont. State Dep't of Corrs.*, 277 Mont. 82, 920 P.2d 93, 95–96 (1996) ($10.00 monthly supervision fee was "civil administrative fee," not punishment); *Pennsylvania v. Nicely*, 536 Pa. 144, 638 A.2d 213, 216 (1994) ($25.00 monthly supervisory fee is administrative in nature and not intended to be punitive). The Kansas legislature did not intend that the fee be punitive and the fee is not so extreme as to constitute punishment. *See Taylor*, 101 F.3d at 783. The supervision fee is modest and the regulation specifically exempts indigent offenders. Finally, collection of the supervision fee is reasonably related to legitimate penological interests, *i.e.* holding offenders accountable for their actions, *see Roark*, 262 Kan. at 197, 936 P.2d at 247–48, and the fee bears a rational relation to the goal of compensating the State of Kansas for its costs. *See Taylor*, 101 F.3d at 784. Because the monthly supervision fee is not punitive in nature, the Court sustains defendants' motion for summary judgment on plaintiff's *ex post facto* claim.

### III. Bill Of Attainder Claim

Plaintiff alleges that as applied to him, K.S.A. § 75–52, 139, K.A.R. § 44–5–

115(b) and IMPP § 04–106 are unlawful bills of attainder. *See Complaint* (Doc. # 1) at 10–12. Defendants do not specifically challenge plaintiff's bill of attainder claim. Because plaintiff proceeds· *in forma pauperis,* however, the Court reviews the complaint *sua sponte* to ensure that it states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Curley v. Perry,* 246 F.3d 1278, 1284 (10th Cir.) (*sua sponte* dismissal under Rule 12(b)(6) or Section 1915(e)(2)(B)(ii) of meritless claim without opportunity to amend does not violate due process or unduly burden plaintiff's right of access to courts), *cert. denied,* 534 U.S. 922, 122 S.Ct. 274, 151 L.Ed.2d 201 (2001).

The United States Constitution states that "[n]o State shall … pass any Bill of Attainder." U.S. Const. art. 1, § 10. In deciding whether a statute inflicts forbidden punishment, the Court looks at three elements: (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish. *Selective Serv. Sys. v. Minn. Pub. Interest Research Group,* 468 U.S. 841, 852, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984). For reasons explained above with regard to plaintiff's *ex post facto* claim, the Court concludes that K.S.A. § 75–52, 139 and its implementing regulation (K.A.R. § 44–5–115(b)) do not impose a penalty which is within the historical meaning of legislative punishment; that the statute and regulation reasonably further nonpunitive purposes such as offender accountabil-

ity and rehabilitation; and that the legislative record does not indicate an intent to punish.[10] *See supra* text part II; *see also Lynce v. Mathis,* 519 U.S. 433, 440 n. 12, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (prohibitions on bills of attainder restrict legislature from singling out disfavored persons and meting out summary punishment for past conduct); *Selective Service,* 468 U.S. at 852, 104 S.Ct. 3348 (burdens on citizens not necessarily punishment). Accordingly, under Rule 12(b)(6), the Court dismisses plaintiff's claim that K.S.A. § 75–52, 139, K.A.R. § 44–5–115(b) and IMPP § 04–106 are unlawful bills of attainder.

## IV. Procedural Due Process Claim

■ Plaintiff alleges that by taking money from his inmate trust account without notice and an opportunity to be heard, defendants denied him procedural due process. *See Complaint* (Doc. # 1) at 7–9. Defendants do not specifically seek summary judgment on plaintiff's claim, but the Court reviews the complaint *sua sponte* to ensure that it states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

■ Plaintiff maintains that defendants should have followed the garnishment procedures set forth in K.S.A. § 60–701 *et seq.* Plaintiff's complaint is too vague and conclusory to state a claim for violation of his constitutional right to procedural due process. Plaintiff has a property interest in the money in his inmate account, *Elliott v. Simmons,* 100 Fed.Appx. 777, 779, 2004 WL 1240915 (10th Cir.2004), but he does not set forth specific federal, state or constitutional procedural safeguards that defendants allegedly violated. *See Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504,

---

**10.** Although plaintiff also challenges IMPP § 04–106, that policy statement does not impose any punishment—it merely sets forth the procedure for the collection of outstanding fees under K.A.R. § 44–5–115(b). The Court addresses below plaintiff's procedural due process challenge.

519–20 (10th Cir.1998) (procedural due process claim must set forth procedures due under law). The collection process of IMPP § 04–106 is essentially an alternative to state garnishment procedures under K.S.A. § 60–701 *et seq.* Plaintiff has not alleged that IMPP § 04–106 requires defendants to follow state garnishment procedures in collecting outstanding fees from inmates in state custody. Absent an allegation that defendants violated applicable procedural safeguards, plaintiff has failed to state a claim for violation of his procedural due process rights. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (*pro se* plaintiff must allege sufficient facts on which recognized legal claim could be based; conclusory allegations without supporting factual averments are insufficient).

■ To the extent plaintiff attempts to challenge the fact that KDOC does not grant a pre-deprivation hearing, he does not state a claim. In determining what process is due, courts must balance (1) the private interests that will be affected by the official action, (2) the risk of erroneous deprivation, and (3) the government's interest, including the fiscal and administrative costs of additional process. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). As to the first factor, the private interest that is affected is plaintiff's interest in avoiding an erroneous assessment of $25.00 against his inmate trust account. Such an interest is not compelling because plaintiff has an opportunity to contest an erroneous assessment through the prison grievance process and KDOC provides free items and services to indigent inmates (such as basic hygiene supplies, medical care, writing supplies and postage). *See Mackey v. Montrym*, 443 U.S. 1, 2, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (interest in continued possession and use of driver's license,

pending outcome of hearing, not compelling in light of further post-suspension hearing and limit of 90–day suspension). As to the risk of erroneous deprivation, the collection of supervision fees involves routine matters of accounting with a low risk of error. *See Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (collection of fees from inmates for cost of housing). In addition, before an individual is re-incarcerated, he receives notice of the assessment. *See* IMPP § 14–107 (probation officer must give offender notice and pre-printed envelope for payment of supervision fees). Because plaintiff had prior notice of the fees and the collection of outstanding fees involves routine matters of accounting, the risk of erroneous deprivation is minimal.

As for the third factor, the Court must consider both the government interest in the policy that the state action advances and the government interest in minimizing administrative and fiscal burdens. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893. Here, the collection of supervision fees advances a policy of offender accountability and rehabilitation, and reimburses the State of Kansas for services provided. To require a pre-deprivation hearing before the collection of outstanding supervision fees (of which the offender has prior notice) would substantially increase the burdens of enforcement. *See Tillman*, 221 F.3d at 422 (no pre-deprivation proceeding required for deduction of room and board fees from inmate account; proceeding would be impractical, significantly increase transaction costs and hinder correctional facility's ability to reduce costs of incarceration).

Plaintiff has not alleged or shown that the prison grievance program is inadequate to address erroneous assessments to his inmate account. *See Elliott*, 100 Fed. Appx. at 779 (prison grievance procedures sufficient to satisfy procedural due process

for erroneous assessments on inmate account); *Tillman,* 221 F.3d at 422 (same); *see also Smith v. Colo. Dep't of Corrs.,* 23 F.3d 339 (10th Cir.1994) (due process satisfied when adequate post-deprivation remedy exists); *Winters v. Bd. of County Comm'rs,* 4 F.3d 848, 856 (10th Cir.1993) (deprivation of procedural due process not complete unless and until state fails to provide adequate constitutionally essential procedures), *cert. denied,* 511 U.S. 1031, 114 S.Ct. 1539, 128 L.Ed.2d 192 (1994); *Woodley v. Dep't of Corrs.,* 74 F.Supp.2d 623, 627 (E.D.Va.1999) (rejecting due process challenge based on payment of supervision costs). Therefore the Court dismisses plaintiff's procedural due process claim for failure to state a claim on which relief can be granted.

## V. Equal Protection Claim

■ Plaintiff alleges that by taking money from his inmate trust account, defendants denied him equal protection. *See Complaint* (Doc. #1) at 16–17. Defendants do not specifically address plaintiff's claim so the Court reviews the complaint *sua sponte* to ensure that it states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff does not allege any differential treatment by defendants and he therefore fails to plead the material elements of an equal protection claim.[11] *See Hall,* 935 F.2d at 1110; *Tonkovich,* 159 F.3d at 533 (at heart of equal protection claim must be allegation of differential treatment from those similarly situated); *see also Vill. Of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) ("class of one" must show intentional treatment different from others similarly situated and lack of rational basis to explain difference in treatment).

To the extent plaintiff alleges that defendants engaged in selective enforcement of K.A.R. § 44–5–115(b) and IMPP § 04–106, he has not stated a claim because he has not alleged that defendants singled him out by use of impermissible considerations "such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City Of Madison, Miss.,* 213 F.3d 267, 277 (5th Cir.2000); *see Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001). In general, provided that a regulation is rationally based, the failure to enforce it "with complete equality does not of itself infringe the constitutional principle of equal protection." *D'Acquisto v. Washington,* 640 F.Supp. 594, 625 (N.D.Ill.1986). For reasons explained above, the Court finds that K.A.R. § 44–5–115(b) is reasonably related to the goal of offender accountability. Therefore plaintiff has failed to state a claim for violation of equal protection rights. *See Waters,* 304 F.Supp.2d at 811 (no equal protection claim based on payment of room and board fees from inmate account); *Woodley,* 74 F.Supp.2d at 627 (rejecting equal protection challenge based on payment of supervision costs).

## VI. Takings Claim

■ Plaintiff alleges that the monthly supervision fee constitutes an unlawful taking of property. *See Complaint* (Doc. #1) at 9–10. Because defendants have not specifically addressed this claim, the Court reviews the complaint *sua sponte* to

---

11. Plaintiff alludes to the fact that defendants treated him differently than they treated parolees convicted after the KDOC implemented K.A.R. § 44–5–115(b). *See Complaint* (Doc. #1) at 20–21. Because plaintiff has not stated a claim for violation of the *ex post facto* clause, he cannot state a claim for violation of the equal protection clause based on his status as an individual who was convicted before the supervision fee regulation was implemented.

ensure that it states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff alleges that deduction of the $25.00 outstanding monthly supervision fee constitutes an unlawful taking of property. A reasonable user fee is not a taking, however, if it is imposed for the reimbursement of the cost of government services. *United States v. Sperry Corp.*, 493 U.S. 52, 63, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989). Here, although 25 per cent of the supervision fee (after collection costs) goes to the crime victims compensation fund, the remaining portion of the fee funds KDOC's purchase or lease of enhanced parole supervision services and equipment (including electronic monitoring, drug screening and surveillance services).[12] *See* K.A.R. § 44–5–115(b)(2). Plaintiff does not allege that the supervision fee is unreasonable or unrelated to the cost of inmate supervision, and the Court must therefore dismiss his takings claim for failure to state a claim on which relief can be granted. *See Vance v. Barrett*, 345 F.3d 1083, 1089–90 (9th Cir.2003) (fee for administration of inmate account not taking where plaintiff did not allege that fee was unreasonable or unrelated to administration of account); *Dudley v. United States*, 61 Fed. Cl. 685, 689 (2004) (extraction of filing fees from prisoner accounts not taking); *see also Sperry*, 493 U.S. at 60, 110 S.Ct. 387 (user fee need not be precisely calibrated to use that party makes of government services); *Massachusetts v. United States*, 435 U.S. 444, 463 n. 19, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978) (user fee must be fair approximation of cost of benefits supplied).[13]

## VII. Defendants' Motion To Strike Surreply

■ Defendants ask the Court to strike plaintiff's surreply, which was filed without leave of court on November 2, 2004. Under D. Kan. Rule 7.1(b), parties are permitted file a dispositive motion, a response and a reply. Surreplies are typically not allowed. *See Metzger v. City of Leawood*, 144 F.Supp.2d 1225, 1266 (D.Kan.2001). Surreplies are permitted in rare cases, but not without leave of court. *Humphries v. Williams Natural Gas Co.*, Case No. 96–4196–SAC, 1998 WL 982903, at *1 (D.Kan. Sept. 23, 1998). Plaintiff has offered no excuse or justification for filing the surreply without leave. The Court therefore sustains defendants' motion to strike plaintiff's surreply and the Court will disregard plaintiff's surreply in analyzing defendants' motion for summary judgment.[14]

**IT IS THEREFORE ORDERED** that the *State Defendants' Motion For Summary Judgment* (Doc. # 31) filed Septem-

---

12. Plaintiff's complaint does not allege that the supervision fee is invalid because a portion of it goes to the crime victims compensation fund. Accordingly, the Court need not determine whether this aspect of the statute is invalid as an unlawful taking of property. In any event, the portion of the supervision fee which goes to the crime victims compensation fund appears to be valid because it cannot be characterized as "a forced contribution to general governmental revenues." *Webb's Fabulous Pharms., Inc. v. Beckwith*, 449 U.S. 155, 163, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980).

13. Defendants also seek summary judgment because (1) sovereign immunity bars any official capacity claims; and (2) plaintiff does not allege personal participation by the individual defendants. The Court need not reach these arguments because it rules in favor of defendants on other grounds.

14. Even if the Court considered the arguments in plaintiff's surreply, it would reach the same result on defendants' motion for summary judgment.

ber 10, 2004 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that the *State Defendants' Motion To Strike Plaintiff's Surreply* (Doc. # 45) filed November 4, 2004 be and hereby is **SUSTAINED**.