**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 21, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL J. TAYLOR,

      Plaintiff-Appellant,

v.

KATHLEEN SEBELIUS, Governor
for Kansas; PHILL KLINE, Attorney
General for Kansas; JOHN/JANE
DOES, any party to suit which are
Other Representatives for the State of
Kansas; ROGER WERHOLTZ,
Secretary of Corrections,

      Defendants - Appellees.

No. 05-3027
(D. Kansas)
(D.Ct. No. 04-CV-3063 KHV)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

---

    After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

therefore ordered submitted without oral argument.

Michael J. Taylor, an inmate at the Winfield Correctional Facility in Winfield, Kansas, brought a *pro se* action pursuant to 42 U.S.C. § 1983. He claimed the application of the Kansas regulation imposing a $25.00 monthly supervision fee on parolees is an unlawful bill of attainder and violated his rights under the *Ex Post Facto* Clause and the Fifth, Eighth and Fourteenth Amendments of the United States Constitution and analogous provisions of the Kansas Constitution. The Defendants, Kathleen Sebelius (Governor of the State of Kansas), Phill Kline (Kansas' Attorney General), and Roger Werhotz (Secretary of the Kansas Department of Corrections) filed a motion for summary judgment, which the district court granted. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

Background

Taylor has been convicted three times in Kansas state court. On January 28, 1985, he pled guilty to the sale of cocaine and received a suspended sentence. On September 2, 1987, he pled guilty to possession of cocaine and again received a suspended sentence. On January 29, 1990, Taylor pled guilty to possession of cocaine after a previous conviction and received a sentence of fifteen years to life in prison, to run consecutive to any sentence he received for his 1985 and 1987 convictions. In March 1990, the state court found he had violated the terms of his suspended sentences on the 1985 and 1987 convictions. The court re-sentenced

him to indeterminate sentences of five to twenty years for each conviction and ordered the sentences to run consecutive to each other. In June 1990, the court reduced Taylor's sentence on the 1990 conviction to five to twenty years in prison, but reaffirmed the sentence would run consecutive to his sentences for the 1985 and 1987 convictions.

In 1998, the Kansas Parole Board released Taylor on parole. Pursuant to § 44-5-115(b) of the Kansas Administrative Regulations, the Kansas Department of Corrections (KDOC) charged Taylor a monthly parole supervision fee of $25.00. On May 24, 2000, Taylor's parole was revoked. During the following period of incarceration, the KDOC deducted $50.00 from his inmate trust account to satisfy the October and November 1999 supervision fees.[1] Taylor was again released on parole on November 2, 2000. However, his parole was revoked on July 17, 2001. On September 3, 2002, Taylor was paroled for a third time. This parole was revoked on December 23, 2002. In February 13, 2003, the KDOC deducted

---

[1] Pursuant to Internal Management Policy and Procedure (IMMP) § 04-106, outstanding fees from a previous incarceration or post-incarceration supervision shall be assessed upon the offender's re-entry into KDOC custody. Although the policy has been amended several times since it became effective in 1998, its substance has remained the same.
On appeal, Taylor states he paid the monthly supervision fees from March 1999 through September 1999. The Inmate Fee History documents do not reflect such payment. Because indigent offenders are exempt from the payment of supervision fees, *see* IMPP § 14-107, Defendants suggest the absence of such payment records may well indicate Taylor's indigent status. Taylor insists he was not indigent at that time. In any event, the only fees at issue in 1999 are the October and November fees.

$25.00 from Taylor's account for satisfaction of his October 2002 supervision fees.

On February 20, 2004, Taylor filed a *pro se* complaint in the United States District Court for the District of Kansas pursuant to 42 U.S.C. § 1983.[2] Specifically, he claimed: (1) Kan. Admin. Regs. § 44-5-115(b) violates the constitutional prohibition on *ex post facto* laws because at the time of his convictions Kansas did not impose a supervision fee; (2) as applied to him, Kan. Admin. Regs. § 44-5-115(b) is an unlawful bill of attainder; and (3) by deducting supervision fees from his prison inmate account, Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment, unlawfully took his property in violation of the Fifth Amendment's Takings Clause, and violated his right to procedural due process and equal protection under the Fifth and Fourteenth Amendments.

On September 10, 2004, Defendants moved for summary judgment on Taylor's claims, arguing no material issues of fact remained, Taylor failed to demonstrate a violation of a constitutional right, and they were entitled to Eleventh Amendment immunity. The district court granted the Defendants' motion for summary judgment and on December 29, 2004, the court entered judgment dismissing the case. *See Taylor v. Sebelius*, 350 F.Supp.2d 888 (D.

---

[2] Taylor also named as defendants unidentified John/Jane Does who implement the KDOC's policies, practices and procedures.

Kan. 2004).  This timely appeal followed.

Standard of Review

"We review de novo the district court's grant of summary judgment, viewing the record in the light most favorable to the party opposing summary judgment." *Neal v. Lewis*, 414 F.3d 1244, 1247 (10th Cir. 2005).  "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and FED. R. CIV. P. 56(c)).  Because Taylor represents himself on appeal, we construe his pleadings liberally. *Id.*

Discussion

In 1994, the Kansas legislature passed a bill authorizing the KDOC to impose fees on inmates and former inmates on supervision.  Specifically, Kan. Stat. Ann. § 75-52,139 provides:

> The secretary of corrections is hereby authorized to adopt rules and regulations under which offenders in the secretary's custody may be assessed fees for various services provided to offenders and for deductions for payment to the crime victims compensation fund.

In accord, the secretary issued a regulation which provides in relevant part:

> (b) Every offender under the department's parole supervision . . . shall be assessed a supervision service fee of . . . 25 dollars per month. . . . A portion of the supervision service fees collected shall be paid to the designated collection agent(s) . . . .  Twenty-five percent of the remaining amount collected shall be paid . . . to the crime victims compensation fund.  The remaining balance shall be paid to the department's general fees fund for the department's purchase or lease of enhanced parole supervision services or equipment. . . .  The department shall establish criteria for the identification of indigent

offenders who shall be exempt from this subsection of the regulation. KAN. ADMIN. REGS. § 44-5-115(b). The procedures to collect the supervision fees are found in IMPP § 14-107, which reiterates that indigent offenders are not required to pay a supervision fee. In addition, IMPP § 12-127 provides that the KDOC will provide basic hygiene supplies to indigent inmates. Finally, IMPP § 04-106 states that outstanding fees or charges from a previous incarceration or supervision shall be assessed upon the offender's re-entry into KDOC custody.

On appeal, Taylor relies on the arguments raised in his complaint.[3] We address each claim in turn.

1.    *Ex Post Facto* Claim

Taylor alleges Kan. Admin. Regs. § 44-5-115(b) violates the constitutional prohibition on *ex post facto* laws because at the time of his convictions, Kansas did not impose a supervision fee. "We review a challenge to a statute under the Ex Post Facto Clause de novo." *Femedeer v. Haun*, 227 F.3d 1244, 1248 (10th Cir. 2000).

---

[3] Taylor also contends the district court erred in staying discovery in the case until the dispositive motions were decided. He claims discovery was necessary to present evidence regarding Defendants' Eleventh Amendment immunity defense. Because we determine Taylor failed to state a claim on the merit, we need not reach the Eleventh Amendment issue and this argument is moot.

In addition, Taylor filed a cross-motion for summary judgment. The district court did not make a specific ruling on Taylor's motion. However, when the district court granted summary judgment in favor of Defendants, its decision necessarily denied Taylor's cross-motion for summary judgment. Because we affirm summary judgment in favor of the Defendants, our decision affirms the district court's implied ruling as well.

Article I, § 10 of the United States Constitution prohibits the States from passing any "ex post facto Law." U.S. CONST. art. I, § 10, cl. 1. "[T]he *Ex Post Facto* Clause incorporated 'a term of art with an established meaning at the time of the framing of the Constitution.' In accordance with this original understanding, . . . the Clause is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood,* 497 U.S. 37, 41, 43 (1990)). The focus is "on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Id.* at 506 n.3. Thus, we must first determine whether the intent of the Kansas legislature was to establish a civil or criminal penalty and, if a civil penalty was intended, "we must then inquire whether there exists the 'clearest proof' that the measure is so punitive in purpose or effect as to override the legislature's intent." *Femedeer*, 227 F.3d at 1249. In doing so, we consider "(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned." *Id*. (quotations

omitted).

In *Roark v. Graves,* the Kansas Supreme Court held that Kan. Admin. Regs. § 44-5-115(a), which imposes a $1.00 monthly fee to administer an inmate trust account, does not violate the *Ex Post Facto* Clause. 936 P.2d 245, 247-48 (Kan. 1997). To reach its conclusion, the Kansas Supreme Court cited to the testimony of Charles Simmons, former Secretary of the KDOC, who testified before the Kansas Senate Judiciary Committee in support of the bill (which eventually became Kan. Stat. Ann. § 75-52,139) authorizing the collection of fees for services from offenders in KDOC custody. Simmons testified in part as follows:

> Assessing fees to offenders is based on a belief that offenders should be accountable for their actions, and contributing to the costs of incarceration or supervision are important components of establishing that accountability.

*Id.* (quotations omitted). The *Roark* court concluded that Kan. Admin. Regs. § 44-5-115(a) is reasonably related to the goals outlined by Simmons and that the "procedure reasonably prepares [inmates] for reentry into the social and economic system of the community upon leaving the correctional institution." *Id.* at 248.

We agree with the district court that *Roark* can be applied to the supervisory fees at issue here.

> Both fees are based on the same authorizing statute, K.S.A. § 75-52,139, and are part of the same regulation, K.A.R. § 44-5-115(a)-(b). . . . [T]he monthly supervision fee cannot be described as punitive in nature. The Kansas legislature did not intend that the fee be punitive and the fee is not so extreme as to constitute punishment. The supervision fee is modest and the regulation specifically exempts indigent offenders. Finally, collection of the supervision fee is

reasonably related to legitimate penological interests, *i.e.* holding offenders accountable for their actions, and the fee bears a rational relation to the goal of compensating the State of Kansas for its costs.

*Taylor*, 350 F.Supp.2d at 896 (citations omitted). It is clear the Kansas legislature intended Kan. Admin. Regs. § 44-5-115 to be a civil penalty. After considering the factors set forth in *Femedeer*, it is also apparent that § 44-5-115 is not "so punitive in purpose or effect" as to override this intent. Thus, we affirm the district court's grant of summary judgment to Defendants on Taylor's *ex post facto* claim.

2.    Eighth Amendment

Taylor also claims he was subjected to cruel and unusual punishment in violation of the Eighth Amendment[4] because the removal of funds from his prison account left him without the funds necessary to purchase items for his basic hygiene. Prison conditions may amount to cruel and unusual punishment if they "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To succeed on his claim, Taylor must show Defendants subjected him to conditions posing a "substantial risk of serious harm" and they had a "sufficiently culpable state of mind." *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir.) (quotations omitted), *cert. denied*, 126 S.Ct. 624 (2005).

The district court carefully reviewed the amounts in Taylor's account

---

[4] The Eighth Amendment states in full: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

-9-

throughout the time his supervisory fees were deducted. *Taylor*, 350 F.Supp.2d at 892-93. It concluded that "a reasonable jury could find that plaintiff was unable to purchase basic hygiene items from February 13 through February 25, 2003, when he had approximately $3.00 in his inmate trust account," assuming $3.00 was insufficient to purchase the items. *Id*. at 894. Nonetheless, as the district court determined, because the prison provides basic necessities to indigent inmates without charge, *see* IMPP § 12-127, and Taylor does not claim he requested or was denied this accommodation, he cannot show the necessary deprivation or that Defendants acted with the requisite culpable state of mind. Thus, his claim must fail. *See Fitzgerald v. Corr. Corp. of America*, 403 F.3d 1134, 1143 (10th Cir. 2005) (alleged conduct of treating physician "did not amount to an act or omission sufficiently harmful to evidence deliberate indifference to serious medical needs") (quotations omitted). We affirm summary judgment in favor of Defendants on Taylor's Eighth Amendment claim.

At this point, we note the district court determined Taylor's remaining claims were not addressed in Defendants' motion for summary judgment. Consequently, the district court reviewed these claims *sua sponte* and determined they should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. We review de novo a dismissal pursuant to § 1915(e)(2)(B). *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999). We accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Id*.

-10-

However, "we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions." *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Dismissal is appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins*, 165 F.3d at 806. With this standard in mind, we review Taylor's remaining claims.

3.      Bill of Attainder

A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Selective Serv. Sys. v. Minn. Pub. Interest Research Group*, 468 U.S. 841, 846-47 (1984) (quotations omitted); *see Bledsoe v. United States*, 384 F.3d 1232, 1238 (10th Cir.), *cert. denied*, 543 U.S. 810 (2004). To determine whether a statute comes within this definition, there are three necessary inquiries: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish." *Selective Serv. Sys.*, 468 U.S. at 852 (quotations omitted). As discussed above, the regulation authorizing supervisory fees is not punitive in nature, but rather, reasonably serves a legitimate nonpunitive legislative purpose. For these reasons, we affirm the dismissal of Taylor's bill of attainder claim.

4.   Takings

Taylor alleges the deduction of the supervision fees from his account violates the Takings Clause of the Fifth Amendment which provides:  "[N]or shall private property be taken for public use, without just compensation."  U.S. CONST. amend. V.  Its purpose "is to prevent the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 718 (10th Cir. 2004) (quoting *E. Enters. v. Apfel,* 524 U.S. 498, 522 (1998)).  "A party challenging governmental action as an unconstitutional taking bears a substantial burden" and we evaluate a regulation's constitutionality by examining "the justice and fairness of the governmental action."  *Id.* (quotations omitted).  "[T]he Supreme Court has identified several factors . . . that have particular significance:  the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the governmental action."  *Id.* (quotations omitted).

The Supreme Court has specifically held the character of the governmental action here constitutional.  In *United States v. Sperry Corp.*, it stated, "[A] reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services."  493 U.S. 52, 63 (1989).  The amount of the fee need not be "precisely calibrated to the use that a party makes of Government services."  *Id.* at 60.  It is only required to be "a fair approximation of the cost of benefits supplied."

*Id*. (quotations omitted).

Taylor does not contest the supervision fee is used, in part, to fund the KDOC's "purchase or lease of enhanced parole supervision services and equipment (including electronic monitoring, drug screening and surveillance services)."[5] *Taylor*, 350 F.Supp. 2d at 900; *see* Kan. Admin. Regs. § 44-5-115(b)(2). Neither does Taylor allege the supervision fee is excessive in relation to the cost of inmate supervision. Accordingly, we affirm the district court's dismissal of Taylor's takings claim.

5.      Equal Protection

Construing Taylor's complaint in a most liberal fashion, it appears he is claiming the retroactive application of Kan. Admin. Regs. § 44-5-115(b) to him, placed him in a class of prisoners who received a harsher total sentence than those who were sentenced prior to the existence of the regulation but were not required to pay the fee.[6] Taylor fails to provide any cogent argument for this claim, citing only *Hudson v. United States,* 522 U.S. 93 (1997), for the proposition that the "Due Process and Equal Protection Clauses protect individuals from sanctions which are down right irrational." (R. Doc. 1 at ¶ 61.) Because we have determined that Kan.

---

[5] Although twenty-five percent of the supervision fee (after collection costs) goes to the crime victims compensation fund, Taylor does not allege the supervision fee is invalid because a portion of it goes to costs other than parole supervision. Therefore, we need not determine whether this aspect of the statute is invalid as an unlawful taking of property.

[6] The remainder of his allegations under this heading are indecipherable.

Admin. Regs. § 44-5-115(b) is neither punitive nor irrational, this claim fails. As to any further discussion, we do not consider arguments raised in a perfunctory manner, unaccompanied by any effort at developed argumentation. *Murrell v. Shalala,* 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (quotations omitted); *see, e.g., Femedeer,* 227 F.3d at 1255 (declining to consider argument where only a perfunctory reference to the issue was raised); *United States v. Kunzman,* 54 F.3d 1522, 1534 (10th Cir. 1995) (declining to consider issues that were nominally raised).

6.    Procedural Due Process

Finally, Taylor alleges the deduction of the supervision fees from his prison account without any pre-deprivation process violates his due process rights under the Fourteenth Amendment. The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. We pose two questions when reviewing a claimed procedural due process violation: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989) (citations omitted). Even if a liberty or property interest is implicated, "due process is flexible and calls for such procedural protections as the particular situation demands" in order "to minimiz[e] the risk of error." *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex,* 442 U.S. 1, 12-13 (1979) (quotations omitted).

As the district court recognized, Taylor has a protected property interest in his prison account. *See Gillihan v. Shillinger*, 872 F.2d 935, 938-39 (10th Cir. 1989) ("To the extent that [the funds] constitute monies received from friends and family outside the prison, plaintiff clearly has a property interest in them. Likewise, it appears that he has a property interest in any wages he has earned or may earn while incarcerated. . . .").

In determining what process is due, courts must balance (1) the private interest that will be affected by the official action, (2) the risk of erroneous deprivation, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the fiscal and administrative costs of additional process. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976); *see Gillihan*, 872 F.2d at 940.

Taylor claims the proper procedure for the KDOC to collect outstanding supervision fees is found in the attachment and garnishment procedures set forth in Kan. Stat. Ann. §§ 60-701-744. If those procedures are not required, he claims he is, at least, entitled to be heard before the delinquent fees are removed from his prison account. We can easily dispose of Taylor's allegation that the KDOC must use the statutory attachment and garnishment procedures. The attachment and garnishment statutes do not incorporate the procedure for the management of prison accounts. The relevant provision is Kan. Admin. Regs. § 44-5-115 as implemented by IMPP § 04-106.

As to the first *Mathews* factor, the private interest that is affected is Taylor's interest in avoiding an erroneous assessment of the supervision fees authorized to be collected from his inmate trust account. The district court correctly concluded such an interest is not compelling because Taylor has an opportunity to contest an erroneous assessment through the prison grievance process and the KDOC provides items and services to indigent inmates, such as basic hygiene supplies, free of charge. With regards to the second factor, the risk of erroneous deprivation, the district court correctly concluded the collection of supervision fees involves routine matters of accounting with a low risk of error. *See Tillman v. Lebanon County Corr. Facility,* 221 F.3d 410, 422 (3d Cir. 2000) (collection of fees from inmates for cost of housing). In addition, IMPP § 04-106 requires each offender be provided a monthly listing of any outstanding fees as part of the Inmate Trust Fund Accounting Report, which is generated pursuant to IMPP § 04-103. Taylor has not alleged that he lacked notice of the outstanding fees and obligations. Given adequate notice and the routine accounting involved in the collection of outstanding obligations, the risk of erroneous deprivation is minimal.

As to the third factor, the district court concluded:

> Here, the collection of supervision fees advances a policy of offender accountability and rehabilitation, and reimburses the State of Kansas for services provided. To require a pre-deprivation hearing before the collection of outstanding supervision fees (of which the offender has prior notice) would substantially increase the burdens of enforcement.

*Taylor*, 350 F.Supp.2d at 898 (citing *Tillman,* 221 F.3d at 422 (no pre-deprivation

-16-

proceeding required for deduction of room and board fees from inmate account;

proceeding would be impractical, significantly increase transaction costs and hinder

correctional facility's ability to reduce costs of incarceration)).  We agree.

In *Gillihan* we stated:

> [W]hen the deprivation is not random and unauthorized, but is pursuant to an affirmatively established or *de facto* policy, procedure, or custom, the state has the power to control the deprivation and, therefore, generally must, in the absence of compelling reasons to the contrary, give the plaintiff a predeprivation hearing.

827 F.2d at 939-40 (citations omitted).  We find the interest of the state is

compelling in this instance.

Here, Taylor does not contest the amount he owed in delinquent monthly

supervision fees.  As we have discussed at length, his various claims regarding the

constitutionality of the supervision fees are without merit.  Rather, his procedural

due process claim is tethered only to his belief that he is entitled to a pre-deprivation

proceeding before the unpaid fees may be deducted from his account upon his return

to prison.  However, the collection of supervision fees is totally automated and is

controlled by a comprehensive computer program.  *See* IMPP § 04-106.  Taylor does

not allege any facts relating to the ability of the KDOC to provide a pre-deprivation

hearing without substantial expense and/or burden.  In short, there is nothing in the

record to suggest a pre-deprivation hearing for inmates who have outstanding

supervision fees would be practicable.  The purpose of supervision fees and the

procedure for the collection of those fees are entirely reasonable and provide all the

process due under the circumstances.

Conclusion

In conclusion, we AFFIRM the district court's grant of summary judgment to Defendants on Taylor's *ex post facto* and Eighth Amendment claims and its *sua sponte* dismissal of Taylor's takings, bill of attainder, equal protection and procedural due process claims.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge